UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBBIE BECHTEL,<br><br>  Plaintiff,<br><br>  v.<br><br>LEBEC COUNTY WATER DISTRICT and MICHAEL HIGHTOWER,<br><br>  Defendants. | Case No.: 1:15-cv-01253 - JLT<br><br>ORDER DENYING DEFENDANTS' MOTION TO DISMISS<br><br>(Doc. 5) |

Plaintiff Debbie Bechtel is a former employee of the Lebec County Water District, where she served as an office manager under the supervision of Michael Hightower. Plaintiff asserts her employment was terminated unlawfully, and claims Defendants are liable for violations of the Fair Labor Standards Act, the First Amendment of the Constitution of the United States, and California law. Defendants seek dismissal of Plaintiff's claims raised pursuant to 42 U.S.C. § 1983, asserting she fails to state a claim upon which relief can be granted for a violation of the First Amendment. (Doc. 5)

Because the facts alleged are sufficient to support Plaintiff's claims for relief and Hightower fails to demonstrate that he is entitled to qualified immunity at this juncture, Defendants' motion to dismiss is **DENIED**.[1]

///

---

[1] Because the arguments and positions of the parties are well set forth in the papers, the Court **VACATES** the hearing on the motion.

1

## I.     Pleading Standards

General rules for pleading complaints are governed by the Federal Rules of Civil Procedure. A complaint must include a statement affirming the court's jurisdiction, "a short and plain statement of the claim showing the pleader is entitled to relief; and . . . a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a). The Federal Rules adopt a flexible pleading policy, and *pro se* pleadings are held to "less stringent standards" than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 521-21 (1972).

A complaint must state the elements of the plaintiff's claim in a plain and succinct manner. *Jones v. Cmty Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984). The purpose of a complaint is to give the defendant fair notice of the claims against him, and the grounds upon which the complaint stands. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). The Supreme Court noted,

> Rule 8 does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).

## II.    Motions to Dismiss

A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Thus, under Rule 12(b)(6), "review is limited to the complaint alone." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations, quotation marks omitted).

A court must construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in favor of the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to officer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Therefore, the Court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Assoc. v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).

### III.     Plaintiff's Allegations

Plaintiff alleges that she was employed as an office manager at Lebec County Water District, under the supervision of Michael Hightower. (Doc. 1 at 2, ¶¶ 4-5) According to Plaintiff, her job duties "did not involve making decisions about compliance with state and federal laws" and she "had no functions as to ensuring compliance with state and federal laws, including overtime laws." (*Id.*, ¶ 7) (*Id.*) Rather, Plaintiff reports her "only function in relation to overtime was to collect overtime records and give them to the bookkeeper who entered the records into LCWD's QuickBooks recordkeeping system." (*Id.*)

She alleges that in June 2014, "while gathering the records of all employees of LCWD, Plaintiff noticed Hightower erasing the overtime hours on timekeeping records for all employees." (Doc. 1 at 2, ¶ 8, emphasis omitted) Plaintiff "informed Hightower that this was illegal and he could not engage in this activity." (*Id.*) She asserts, "Hightower appeared as if he did not want to hear this complaint from Plaintiff and informed Plaintiff that the topic was not open for discussion." (*Id.* at 2-3, ¶ 8)

In addition, Plaintiff alleges that on July 21, 2014, she "was eating lunch at the office," which Plaintiff locked because she "was the only person present in the office, and there was a substantial amount of money Plaintiff had had been counting on a table in the office." (Doc. 1 at 3, ¶ 9) Plaintiff asserts a person came to the door, and she "opened the door and informed the male person that she was on her lunch hour and the office was closed for lunch." (*Id.*) According to Plaintiff, "The person claimed to be a customer of the LCWD and demanded to be allowed inside to pay his water bill

because he wanted it credited that day." (*Id.*) She asserts she "advised the customer that he could pay the bill by placing it in a box outside that is provided by LCWD and that it would definitely be credited that day." (*Id.*) When Plaintiff started to shut the door, the customer "shoved his boot inside the door." (*Id.*) Plaintiff alleges "she felt threatened and feared for her safety and she shut the door." (*Id.*)

Plaintiff contends the customer reported the incident to Hightower, who "questioned Plaintiff about what happened that day." (Doc. 1 at 3, ¶ 10) Plaintiff alleges:

> [She] advised Hightower that she was on her lunch break, and was off the clock as she had clocked out for lunch[,] which means Plaintiff would be working without pay while off the clock if she were to allow the customer inside, accept payment, and prepare the paperwork for such a transaction… Plaintiff further explained to Hightower that she informed the male person to make payment in the box outside and the person stuck his foot in the door which created feared for Plaintiff's safety and that was why she did not allow the person inside and shut the door. Plaintiff told Hightower that the money was sitting on the desk and that she felt unsafe and fearful.

(*Id.*) Plaintiff asserts Hightower then took her keys and suspended her. (*Id.*) She reports that the next day, she received verbal notice from Hightower that her employment with the LCWD was terminated. (*Id.*) Plaintiff received a mailed letter, dated July 22, 2014, providing written notice of her firing. (*Id.*)

Based upon the foregoing facts, Plaintiff asserts the LCWD is liable for retaliation in violation of the Fair Labor Standards Act and violations of Cal. Labor Code §§ 6310, 6311, and 1102.5. (Doc. 1 at 4-6) Further, Plaintiff asserts both Hightower and the LCWD are liable for violations of her rights arising under the Constitution of the United States and California's Bane Act. (*Id.* at 6-9)

Defendants now seek dismissal of Plaintiff's claims for violations of her constitutional rights. (Doc. 5) Plaintiff filed her opposition to the motion on November 6, 2015 (Doc. 7), to which Defendants filed a reply on November 16, 2015 (Doc. 11).

**IV.    Discussion and Analysis**

Plaintiff's Fifth and Sixth Claims for Relief arise under 42 U.S.C. § 1983. (Doc. 1 at 6-8) Section 1983 "is a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). In relevant part, Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

4

42 U.S.C. § 1983.  To state a cognizable claim under Section 1983, a plaintiff must allege (1) deprivation of a constitutional right and (2) a person who committed the alleged violation acted under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Williams v. Gorton*, 529 F.2d 668, 670 (9th Cir. 1976).

A plaintiff must allege a specific injury was suffered, and show causal relationship between the defendant's conduct and the injury suffered.  *See Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976).  A person deprives another of a right "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do so that it causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).  Here, Plaintiff asserts Hightower and the LCWD unlawfully retaliated against her for speech protected by the Constitution. (Doc. 1 at 6-8)

### A.  First Amendment Retaliation

Defendants argue Plaintiff's claims fail because she "made the Protected Speech in her capacity as a public employee and not that of a private citizen."  (Doc. 5 at 4)  "The First Amendment forbids government officials from retaliating against individuals for speaking out."  *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010).  The Supreme Court explained: "[P]ublic employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006) (citations omitted).  The Ninth Circuit set forth the five-step inquiry to determine whether a public employee's First Amendment rights were violated:

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009).

///

///

5

### B. Speech as a private citizen or public employee

"Statements are made in the speaker's capacity as citizen if the speaker 'had no official duty' to make the questioned statements, or if the speech was not the product of 'performing the tasks the employee was paid to perform.'" *Eng*, 552 F.3d at 1071 (quoting *Posey v. Lake Pend Oreille School Dist. No*. 84, 546 F.3d 1121, 1126-27 (9th Cir. 2008)). On the other hand, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421. The plaintiff bears the burden of showing that she spoke in the capacity of a private citizen and not a public employee. *Id.*, 547 U.S. at 421-22; *Posey*, 546 F.3d at 1126-27.

Given the mixed question of fact and law, the Court must make two inquiries when determining whether the speaker was speaking as a private citizen. *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 966 (9th Cir. 2011) (citing *Posey*, 546 F.3d at 1129). "First, a factual determination must be made as to the 'scope and content' of a plaintiff's job responsibilities.'" *Id.* (citing *Eng*, 552 F.3d at 1071). This inquiry "is a practical one" because " '[f]ormal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes." *Garcetti*, 547 U.S. at 424-25; *see also Johnson*, 658 F.3d at 966. "Second, the 'ultimate constitutional significance' of those facts must be determined as a matter of law." *Johnson*, 658 F.3d at 966 (quoting *Eng*, 552 F.3d at 1071).

Toward this end, when *Posey* considered whether the speech was a "product" of the employment, it considered the specific "work product" of the speaker. In considering the holding in *Garcetti*, *Posey* noted,

> the Supreme Court concluded that when a public employee speaks pursuant to his or her official duties, as Ceballos did, the speech is not protected because any restriction on that speech "simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Id*. at 422, 126 S.Ct. 1951. The Court distinguished "work product" that "owes its existence to [an employee]'s professional responsibilities" from "contributions to the civic discourse," which "retain the prospect of constitutional protection" for the speaker. Id. at 421–22, 126 S.Ct. 1951. Because

> Ceballos's preparation of the memo "fell within the scope of his job responsibilities"—because it was written in his capacity as employee and not citizen—the memo itself fell outside the sphere of First Amendment protection. Id. at 422, 126 S.Ct. 1951.

Defendants argue Plaintiff that Plaintiff "worked as the 'office manager' at LCWD, and her official duties included recordkeeping of employee time records." (Doc. 5 at 6, internal citations omitted) Defendants observe that "speech found to be made pursuant to the employee's official duties include a prison employee's internal complaints about her supervisor's misconduct, and a payroll employee's complaint about the timekeeping systems and employee abuse of overtime and sick leave." (*Id.*, citing *Freitag v. Ayers*, 468 F.3d 528, 544 (9th Cir. 2006); *Huff v. City of Portland*, 2008 U.S. Dist. LEXIS 35643 (D. Or. 2008); *Traxler v. Multnomah County*, 2008 U.S. Dist. LEXIS 7456 (D. Or. 2008)) Further, Defendants contend the facts now before the Court are similar to those in *Traxler*, where "the plaintiff worked as the manager of the county payroll department and complained of overtime, sick time, and comp time abuse, as well as her concerns about the new time keeping system." (*Id.,* citing *Traxler*, 2008 U.S. Dist. LEXIS 7456 at *46) Defendants note that the Court found the "complaints fell within her official duties as the manager of payroll, and that as a result, such speech was not protected under the First Amendment." (*Id.*)

On the other hand, Plaintiff contends *Traxler* is not analogous, and that the facts are "significantly different." (Doc. 7 at 3) Plaintiff notes that Traxler testified that in executing her official duties, she "solved staff problems, resolved interpersonal conflict in the unit, corrected or tried to correct inefficiency, provided internal customer service, tried to provide order and direction to employees, and reviewed polices and procedures." (*Id.* at 4, quoting *Traxler*, 2008 U.S. Dist. LEXIS 7456 at *47) The court concluded Traxler's speech was made as a public employee and not a private citizen because "[h]er reports of overtime, sick time, and comp time abuse, as well as her concerns and questions about the new timekeeping system, all fall within her official duties as the manager of Payroll." (*Id.*) In contrast, here, Plaintiff alleged she did not "make decisions about compliance with state and federal laws," and she was not in charge of payroll. (Doc. 1 at 2 ¶ 7; *see also* Doc. 7 at 4) Rather, she claims that her duties were limited to merely retrieving the overtime records and giving them to the bookkeeper. (Doc. 1 at 7) Indeed, she alleges, "The Protected Speech was not a part of

7

Plaintiff's job duties." Thus, Plaintiff concludes, "*Traxler* is inapposite and does not support the defense proposition." (Doc. 7 at 4)

In reply, Defendants contend Plaintiff attempts to too narrowly define her job duties, as the plaintiff did in *Clarke v. Multnomah County*, 2007 WL 915175 (D. Or. March 23, 2007). (Doc. 11 at 3) In *Clarke*, the plaintiff expressed concern regarding a personal income tax "and the restoration certain state funding combining to 'double fund' certain programs." *Id.*, 2007 U.S. Dist. LEXIS 21427, at *34. Clarke argued "that nowhere in her job description or articulated job duties was she required to monitor individual county employees' adherence to fiduciary laws and regulations and to complain if she felt they were breaching such obligations." *Id.* at *36. However, the court found Clarke defined her duties "too narrowly" because she also testified that she "was the budget person for her division, had responsibility for tracking funds and ensuring they were both coming in and going out appropriately, and reporting to the CFO." *Id.* at *34, 36. Because Clarke made statements about funds including "what was the County going to do about the double funding …, overpayments for Medicaid, the 9.1% projected decrease in funding," the court found the communications were "made pursuant to the employees official job duties." *Id.* at *35-36. Defendants contend the Court should find this case is similar to *Clarke*, and that Plaintiff's statement about erasing overtime records was a product of her executing her official job duties. (Doc. 11 at 4-5)

Significantly, though Plaintiff alleges she was an office manager, she also alleges that her job "did not involve making decisions about compliance with state and federal laws." (Doc. 1 at 2, ¶ 7) Plaintiff contends her "only function in relation to overtime was to collect overtime records and give them to the bookkeeper who entered the records into LCWD's QuickBooks recordkeeping system." (*Id.*) Though Defendants urge that Plaintiff's job duties are broader than she alleges—and this might be what is ultimately established—at this juncture, the Court must assume the facts as pleaded are true. *See Iqbal*, 556 U.S. at 679. Thus, according to the complaint at most, Plaintiff acted as a messenger when she gathered employee records and delivered them to the bookkeeper. Her statements do not concern her messenger activity and there are no allegations supporting a conclusion that Plaintiff was required to review the records in the course of her delivery or that she was in a restricted area— available to her only because of her messenger status—when she saw Hightower altering the records.

8

Likewise, the facts do not support a conclusion that Plaintiff learned the Hightower's actions were "illegal" through the execution of her job as office manager or overtime-records messenger. Consequently, her speech did not owe its existence to her professional responsibilities, and was "not the product of performing the tasks [Plaintiff] was paid to perform." *See Eng*, 552 F.3d at 107; *Garcetti*, 547 U.S. at 421.

### C. Qualified Immunity

Defendants argue Hightower is entitled to qualified immunity, which protects government officials from civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The threshold inquiry to determine whether a defendant is entitled to qualified immunity is whether the facts alleged, taken in the light most favorable to the plaintiff, show the defendant violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If there is a constitutional violation, "the next sequential step is to ask whether the right was clearly established." *Id.* Finally, the right must be so "clearly established" that "a reasonable official would understand that what he is doing violates that right." *Id.* at 202; *see also McDade v. West*, 223 F.3d 1135, 1142 (9th Cir. 2000) ("The test for qualified immunity is: (1) identification of the specific right being violated; (2) determination of whether the right was so clearly established as to alert a reasonable officer to its constitutional parameters; and (3) a determination of whether a reasonable officer would have believed that the policy or decision in question was lawful").

As discussed, Plaintiff alleges Hightower violated her First Amendment rights. The Ninth Circuit has determined that it has "long been the law of the land" that speech upon matters of public concern, and not pursuant to job responsibilities, is protected by the First Amendment. *Eng*, 552 F.3d at 1075. Defendants argue, "The holdings in *Garcetti* and *Traxler, supra*, indicate that the right of a public employee to complain about alleged tampering with records which she herself was charged with maintaining is not clearly established." (Doc. 5 at 8)  However, also as discussed above, there are no facts supporting Defendants' assertion that Plaintiff's official job responsibilities included "maintaining" the time records. Moreover, courts have held on numerous occasions that a public employee's exposure of wrongdoing by her employer—such as misuse of funds and mismanagement—

is of inherent public concern.  *See, e.g.*, *Johnson v. Multnomah County*, 48 F.3d 420, 425 (9th Cir. 1995); *Hyland v. Wonder*, 972 F.2d 1129, 1139 (9th Cir. 1992); *Vasquez v. City of Bell Gardens*, 938 F. Supp. 1487, 1493 (C.D. Cal. 1996).  Thus, Plaintiff's right to express a concern about the payment of overtime by the LCWD is clearly established.

Although Defendants argue "Hightower could have reasonably relied on the holdings in *Garcetti* and *Traxler* to support his position that the Protected Speech was not actually protected" (Doc. 5 at 8), the Court disagrees in light of the extent of Plaintiff's job duties as alleged in the complaint.

**V.      Conclusion and Order**

As set forth above, Plaintiff has alleged facts sufficient to support a conclusion that her speech was made as a private citizen rather than as a public employee.  Further, Hightower is not entitled to qualified immunity at this time.[2]  Accordingly, Defendants' motion to dismiss is **DENIED**.

IT IS SO ORDERED.

Dated:     **November 19, 2015**              /s/ Jennifer L. Thurston
                                                                    UNITED STATES MAGISTRATE JUDGE

---

[2] Hightower may renew this claim if discovery reveals that Plaintiff's job duties *did include* responsibilities toward auditing the overtime records, making proper overtime payments or the like.